# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

Kenneth Krayeske,
    Plaintiff,

v.

No. 3:07cv0827 (SRU)

The City of Hartford, et al.,
    Defendants.

## RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION

On January 3, 2007, while photographing the Gubernatorial Inauguration Day Parade, Kenneth Krayeske was arrested for breach of peace and interfering with a police officer. Krayeske brings this action, alleging a number of Constitutional violations, against the City of Hartford (the "City"), Hartford Police Officers Jeff Antuna, Andrew Weaver and Mack Hawkins, and Connecticut State Police ("CSP") Officers, then-sergeant Mark Cassista, and officer Pedro Rosado in their individual capacities. On November 6, 2009, I heard argument on the motions for summary judgment filed by the City and the individual defendants. I granted the motions in their entirety with limited exception to the First Amendment and false arrest claims against Antuna. Subsequently, Krayeske retained new counsel and filed a motion for reconsideration on November 23, 2009 (doc. # 87). For the following reasons the motion for reconsideration is denied.

**I.**  **Background**

At summary judgment, drawing all reasonable inferences in favor of Krayeske, a jury could have found the following facts. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On January 3, 2007, then-sergeant Cassista was assigned as the Commanding Officer of the State Police Central Criminal Intelligence Unit (CCIU). On the same date, Rosado was

assigned as an investigator in CCIU. CCIU is charged with collecting, receiving, evaluating, analyzing, disseminating and storing intelligence data concerning organized criminal activity in the state. *See generally* Conn. Gen. Stat. § 29-4; Cassista Aff. (doc. #72-4) at ¶ 2. The operational policy governing the CCIU states that it collects and stores information on the activities and associations of individuals who are reasonably suspected of being or having been involved in planning, organizing, financing, or committing criminal acts. The manual specifically prohibits the collection and maintenance of data on individuals or groups merely because they support unpopular causes or on the basis of political affiliation. The reasonable suspicion standard on which the CCIU decides to monitor an individual is defined by 28 C.F.R. § 23.20 (reasonable suspicion is established when information exists which establishes sufficient facts to give a trained law enforcement the basis to believe that there is a reasonable possibility that an individual or organization is involved in a definable criminal activity or enterprise).

In 2006, the CCIU monitored the gubernatorial election campaign for indications of criminal or terrorist activity directed at any of the candidates, including Governor Jodi Rell. In preparing for the inauguration ceremony, parade, and ball the CCIU worked with the Governor's security unit, state capitol police, the Hartford Police Department ("HPD") and other law enforcement officials to ensure that the entire day's events were conducted in a safe and well-organized fashion. Part of CCIU's responsibilities included identifying threats to the Governor. This entailed developing an intelligence assessment for the inauguration events. The intelligence threat assessment provided photographs and basic information on persons of interest who had been identified as possible threats to Governor Rell or who were identified as those expected to attempt to disrupt the planned inaugural events. As part of intelligence collection efforts,

Cassista directed Rosado to monitor the internet for indications that individuals were planning to disrupt the events. In an internet search Rosado discovered a website called "Connecticut Local Politics," which published an article called "Moodygate Back from the Dead," dated December 14, 2006. Krayeske posted a comment to the article stating "Pony up Czarina . . . Whose [sic] going to protest the inaugural ball Jan. 3 with me? No need to make nice after watching this documentary about CJTS: http://www.youthrightsmedia.org/cost.html." Rosado notified Cassista of Krayeske's comment and Cassista directed Rosado to inquire into Krayeske's history. As part of the investigation, Rosado discovered that Krayeske had been arrested on June 4, 2004 for obstructing free passage at an event attended by Governor Rell.[1]

Cassista determined, based on all the information available, that Krayeske was a person of interest who might seek to disrupt inauguration events. Cassista notified other law enforcement personnel involved in inauguration events of Krayeske's identity. Rosado was directed to prepare a summary of the information on Krayeske, including a photograph to disseminate at the inauguration ceremony briefings. Cassista spoke to HPD personnel about persons of interest and directed them to observe persons of interest, keep them in sight and contact event command post for further instructions. At the briefings, Cassista provided the officers with photos of Krayeske.

---

[1] The record, on summary judgment, revealed that Krayeske's prior arrest record includes an arrest in March 2003 for criminal trespass, breach of peace and interfering with a police officer, an April 2003 arrest for disrupting the Jefferson, Jackson, Bailey dinner in Southington by heckling Hadassah Lieberman, and an arrest in summer 2004 for obstructing peaceful passage. It is not clear, however, that the CCIU, at the time of the inaugural festivities, was aware of any arrest but the 2004 arrest for obstructing free passage. *See* doc. 72-16 (also stating that the Governor's security informed the CSP that Krayeske had been disruptive at another parade that Governor Rell attended).

During the parade, Weaver was assigned to the State Police Command Center, Hawkins was assigned to a security detail walking along the parade route. Krayeske observed the parade at the corner of Ann and Asylum streets in Hartford. He photographed the parade participants. He then jumped on his bike and traveled to Pearl Street and Ford, dismounted his bike and stood on the median of the road taking photographs of the parade. Antuna stated that he observed Krayeske step off the median into the parade route and approach Governor Rell. Krayeske denies this. Neither Weaver, Cassista nor Hawkins observed the arrest. Rosado and Cassista reported seeing a male on a bike cross the empty traffic lanes and jump off his bike and take something out of a large shoulder bag. Rosado left his post and walked over to Krayeske, observing that it was a camera that Krayeske took out of the bag. Rosado reported that Krayeske did not appear to be displaying media credentials. Rosado then observed an officer approach Krayeske and escort Krayeske away from the parade route. Rosado did not, himself, observe Krayeske breach the parade route.

Antuna subsequently placed Krayeske under arrest for breach of peace and interfering with a police officer. Krayeske was held on a $75,000 bond, which was reduced to a promise to appear by the bail commissioner. On May 24, 2007, Krayeske initiated suit alleging false arrest in violation of his First, Fourth and Fourteenth Amendment rights, and unreasonable bond in violation of the Eighth Amendment. As a result of his arrest Krayeske claims to suffer from fear, anxiety, loss of reputation, loss of liberty and deprivation of Constitutional rights. He seeks compensatory and punitive damages, a declaratory ruling that municipal police departments may not compile and maintain lists of political activists, injunctive relief requiring the City of Hartford to destroy any lists of political activists in its possession, and attorneys' fees and costs

under 42 U.S.C. § 1988. The defendants moved for summary judgment.

On November 6, 2009, ruling from the bench, I granted the motions for summary judgment except with respect to Krayeske's First and Fourth Amendment claims against Antuna. The record on summary judgment gave no indication that Weaver and Hawkins played any role in Krayeske's arrest. Their involvement was limited to legitimate police activities conducted after the arrest. Similarly, despite Krayeske's conclusory assertion that Cassista and/or Rosado ordered the arrest, the record lacked any evidence linking Cassista and Rosado to the arrest. Complete discovery had occurred, and Krayeske had deposed Cassista and Rosado and failed to unearth evidence that Antuna acted at the behest of Cassista and Rosado. I noted, that even if Antuna understood that he was supposed to arrest Krayeske because his name appeared on the list, there is no evidence attributing Antuna's understanding to the conduct of Cassista or Rosado. Krayeske's excessive bail claim also failed. Bail setting is a function of Connecticut state law and the officer setting bail is absolutely immune from liability. *See Walczyk v. Rio*, 496 F.3d 139, 164 (2d Cir. 2007). The municipal liability claim against the City failed in the absence of evidence in the record from which a reasonable juror could conclude that a final policy maker for the City played any role whatsoever in Krayeske's arrest.

## II.     Standard of Review

The standard for granting a motion for reconsideration is strict; motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Motions for reconsideration will not be granted where the party merely

seeks to relitigate an issue that has already been decided. *Id.* The three major grounds for granting a motion for reconsideration in the Second Circuit are: (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice. *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478).

### III. Discussion

Krayeske moves for reconsideration on a number of grounds. I address each in turn.

First, he argues that I should consider newly offered evidence in support of his claim that Cassista orchestrated a cover-up of the political nature of Krayeske's arrest. *See* doc. # 89 at ¶¶ 136-42, exs. 3 (¶. 70/L18-71/L10, 129/L8-15), 31, 43-44. Although Krayeske concedes that his motion for reconsideration is premised on evidence that he had in his possession at the time defendants filed their motions for summary judgment, I have nonetheless reviewed that evidence. The newly offered evidence, however, does not create a genuine issue of material fact whether Cassista orchestrated a cover-up of the political motivation allegedly behind Krayeske's rest. Indeed, the proffered evidence is duplicative of facts already considered and demonstrates nothing more than that Leonard Boyle, then-Public Safety Commissioner, prepared a briefing of Krayeske's arrest for Governor Rell and confirmed by e-mail certain facts with the officers involved. *See* doc. # 89 at ¶¶ 136-42, exs. 3 (pp. 70/L18-71/L10, 129/L8-15), 31, 43-44. Nothing probative can be gleaned from this evidence that would warrant my reconsidering granting summary judgment in favor of Cassista. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). At bottom, the inferences that Krayeske draws from Cassista's post-arrest

conduct are speculative at best and certainly do not form a factual basis from which a reasonable jury could conclude that Cassista orchestrated a politically motivated arrest of Krayeske or covered up the real reason for such arrest.[2]

Second, Krayeske argues that I overlooked genuine issues of material fact concerning the conduct of Rosado.[3] Here and at summary judgment, Krayeske maintains that Rosado somehow signaled or initiated Krayeske's arrest. Krayeske also contends that Rosado was fully aware that Krayeske was unlawfully detained by HPD and failed to act on that knowledge. At summary judgment, to survive the motion, Krayeske needed to have presented sufficient probative

---

[2] In his motion, Krayeske also seeks reconsideration of my ruling that Cassista cannot be held liable for placing Krayeske on the "person of interest" list. Krayeske argues that Cassista should have exercised his reasonable judgment as a law enforcement officer and recognized Krayeske's comments concerning the inaugural events as nothing more than political discourse. Krayeske failed to come forth with substantive law at summary judgment and I have not found any authority indicating that it is a First Amendment violation for law enforcement agents, in preparation for a public event that political figures will attend, to put together a list of people who may disrupt the event and share that list with other law enforcement officers. Intelligence gathering and investigatory conduct that prompts law enforcement to monitor a person is not typically actionable. *See Handshu v. Special Services Division*, 605 F. Supp. 1384, 1400 (S.D.N.Y. 1985); *see also Fifth Ave. Peace Parade Committee v. Gray*, 480 F.2d 326 (2d Cir. 1973) (holding that the FBI's investigation and dissemination of report about plaintiff's planned protests was not an actionable First Amendment violation on the grounds of subjective chill and the FBI had a legitimate interest in and responsibility for public safety); *see also Laird v. Tatum*, 408 U.S. 1 (1972) (intelligence gathering having a general chilling effect was not sufficient to allege a First Amendment claim; plaintiffs needed to show specific present objective harm or a threat of specific future harm). Furthermore, because no identifiable right exists protecting Krayeske from law enforcement accessing publicly available information about him, and an objectively reasonable officer investigating potential threats to the Governor would be concerned about Krayeske's alleged "no need to make nice" statement posted online, qualified immunity would attach to the creation of the list/briefing and Krayeske's inclusion on it. *See Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995).

[3] Krayeske also argues that I overlooked "substantive law" relating to his claims against Rosado. The fact that my application of the law to the facts of this case arrives at a result contrary to the one sought by Krayeske is insufficient to support reconsideration.

evidence to establish a genuine issue of material fact concerning Rosado's role in Krayeske's arrest. *Celotex*, 477 U.S. at 327; *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Evidence that is "merely colorable," or is not "significantly probative," is simply insufficient to survive summary judgment. *Anderson*, 477 U.S. at 249-50 ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").

In support of the claim that Rosado played a role in initiating Krayeske's arrest and covering up the illegality of that arrest, Krayeske directs me to Intake Report 15925. *See* doc. ## 72-14, 72-16. Krayeske infers that the two versions of the Intake Report are evidence that Rosado rewrote the report to cover-up the illegality of Krayeske's arrest. I considered the reports at summary judgment and decided they fail to support the inference that Krayeske suggests. Nothing in the record at summary judgment supports an inference that Rosado falsified a report. The only thing, on this record, that can reasonably be inferred from the two-page report is that the CCIU supplemented or revised its intake record concerning Krayeske with information from his arrest. *Id.* In addition, nothing in the record at summary judgment, or in the supplemented record on reconsideration, suggests that Rosado had personal knowledge that Krayeske's arrest was unlawful. The mere fact that Rosado did not personally witness Krayeske commit an offense fails to give rise to a genuine issue of material fact that Rosado possessed personal knowledge that Krayeske was unlawfully detained. To remedy a violation, Rosado would need to know one had occurred. Because the record does not support the accusation that Rosado played a role in Krayeske's arrest, a reasonable jury could not find that he failed to remedy the alleged Constitutional violations. Reconsideration of my ruling concerning Rosado is denied.

Krayeske also moves for reconsideration of the ruling granting the City's motion for summary judgment. Krayeske's arguments concerning the City are threefold. First, he argues that I overlooked substantive law and missed facts in the voluminous record that would support an inference that the City ceded authority to the CSP for the Inaugural festivities and thereby adopted the CSP's policy of classifying Krayeske as a "person of interest." Next, Krayeske argues that I overlooked facts and law concerning the bond amount and the role Hawkins played in the setting of Krayeske's bail. Lastly, Krayeske asks that I consider additional material not made part of the summary judgment record purporting to demonstrate that the City played an integral role in placing Krayeske on the "person of interest" list.

Krayeske's new evidence shows that the City supplied CSP with information concerning Krayeske's past arrest history and Cassista edited that fact out of a January 10, 2007 report. *See* doc. 89, ex. 13. There is also evidence that on January 26, 2007 the CSP received an e-mail showing that M. Lisa Moody, the Governor's chief of staff, forwarded to the Governor's Security Unit information about Krayeske's planned non-violent protest scheduled for January 30, 2007. *Id.* ex. 46. Krayeske's uses this evidence to renew points made at oral argument. It does not affect my holding at summary judgment that, even if the City cooperated with the state police to provide security at the inaugural events, the record is devoid of any act by a final policy maker for the CSP that could be deemed to be an act by a final policy maker for the City.

With respect to Krayeske's claims concerning the City's and Hawkins's liability for setting an allegedly unreasonable bond, Krayeske cannot point to controlling decisions or facts that I overlooked that would reasonably be expected to alter my ruling. Connecticut law allows police officers to set temporary bail in certain cases. *See* Conn. Gen. Stat. § 54-63c(a). Under

Connecticut law, officers have authority to make preliminary bail determinations prior to arraignment. The officer is required to conduct an interview with the arrestee to ascertain relevant terms and conditions of release. At that point the officer may release the arrestee on a written promise to appear or require the posting of a bond "as may be set by the police officer." *Id.* If the arrestee does not post bond the police officer is to notify the bail commissioner. The bail commissioner has the authority to approve or reject the police officer's determination.

"[W]hen a police officer sets temporary bail" pursuant to this statute, "he performs a judicial function and hence has absolute immunity from suit." *Walczyk*, 496 F.3d at 164. "It is . . . well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Id., quoting Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (extending absolute immunity to parole board officials performing a quasi-judicial function in making parole decisions); *see also Butz v. Economou*, 438 U.S. 478, 511 (1978) (granting absolute immunity to administrative hearing examiners performing adjudicatory functions within federal agencies). As the Supreme Court explained, it is "the nature of the function performed, not the identity of the actor who performed it, that inform[s] our immunity analysis." *Forrester v. White*, 484 U.S. 219, 229 (1988) (holding that judges do not enjoy absolute immunity when performing administrative, legislative, or executive functions). "Because the setting of bail is a judicial function, absolute immunity extends to police officers when they perform that function pursuant to statute.*"
Walczyk,* 496 F.3d at 165 (internal citation omitted); *see Cleavinger v. Saxner*, 474 U.S. 193, 205 (1985). Krayeske's motion for reconsideration with respect to the City and Hawkins is denied.

**IV.     Conclusion**

Krayeske has not demonstrated an intervening change in the law or a clear error in need of correction. The facts that Krayeske claims I overlooked were, in fact, considered. Krayeske's newly submitted evidence changes nothing. His motion for reconsideration is merely an attempt to relitigate his contention, unsupported by the record, that the CSP, HPD and Governor's Security Unit conspired to arrest Krayeske because of his political affiliation. For the foregoing reasons Krayeske's motion for reconsideration (doc. # 87) is denied.

It is so ordered.

Dated at Bridgeport, Connecticut, this 28th day of September 2010.

                                              /s/ Stefan R. Underhill
                                              Stefan R. Underhill
                                              United States District Judge